[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendants have filed motions (#103 and #109) pursuant to Practice Book § 143 to dismiss this case for lack of subject matter jurisdiction based on an alleged failure by the plaintiffs to exhaust their administrative remedies.
The named plaintiff, Theresa Kish, and seven other individuals allege in their complaint that they all own property contiguous to Millard Pond, which is located on Five Mile River in Norwalk about four and a half miles upstream from Long Island Sound. The pond was created around 1850 by the creation of a dam at its southern end. The dam is now owned and/or controlled by the defendants, Salo S. and Dorothy B. Cohn, and Charles C. and Susan J. Slama.
The plaintiffs brought their complaint in six counts. In the first count, they allege that they have a property interest in, and the right to use, the pond for recreational and aesthetic purposes; that the dam has been declared unsafe by the Connecticut Department of Environmental Protection (DEP); and CT Page 4787 that the defendants are threatening to remove or lower the dam, which in turn will either destroy or radically decrease the size of the pond, thereby causing them irreparable injury for which they have no adequate remedy at law. In the second and third counts, respectively, the plaintiffs claim that the removing or lowering of the dam constitutes an absolute or negligent nuisance. In the fourth count, the plaintiffs allege that the proposed removal or lowering of the dam would violate their rights as beneficiaries of a public trust in the waters of this state. The fifth count seeks a declaratory judgment regarding the rights of the plaintiffs in and to Millard Pond. In the sixth count, the plaintiffs claim that they are third party beneficiaries of deeds from a Joseph James Pettey to their predecessors in title and that the proposed removal or lowering of the dam constitutes a breach of their contract rights.
The DEP, pursuant to General Statutes § 22a-402,[1] had issued previous orders in 1983 and 1988 regarding remedial measures for this dam. The order involved in this proceeding was issued on August 12, 1994, and declared the dam unsafe. The DEP determined that the dam was leaking and could not withstand a 100 year frequency storm. After engaging in negotiations, the DEP and the defendants entered into a "Consent Order" dated May 2, 1995. This order obliged the defendants to hire a professional engineer to prepare plans for "removal, partial removal, or repair of the dam" in order to make it safe for a 100 year storm to pass.
The plaintiffs started this action in the fall of 1997 and the last brief in this case was filed in mid-December, 1997. At that time there was no indication that the defendants had filed actual construction drawings for a specific design for a solution to the problem of the dam, or that they or their engineers were advocating the removal or partial removal of the dam, rather than repairing it. The file, moreover, does not contain any information regarding the reaction of the DEP to any plans that possibly have been filed by the defendants. Thus, it is not know whether or not the DEP intends to hold a public hearing on the defendants' plans regarding the dam.
The doctrine of exhaustion of administrative remedies was discussed extensively in Johnson v. Department of Public Health,48 Conn. App. 402, ___ A.2d ___ (1998). The Appellate Court held "Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of CT Page 4788 the [plaintiff's] claim." (Citations omitted) Id., 108. The court also stated that "[i]t is a settled principle of administrative law that, if an adequate administrative remedy exists, it mut be exhausted before the Superior Court will obtain jurisdiction to act in the matter . . . The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review." (Citations omitted; internal quotation marks omitted). Id., 111.
The Johnson court also discusses two exceptions to the exhaustion doctrine. One is where "recourse to the administrative remedy would be inadequate or demonstrably futile." The other exception arises when such an action "would not result in a favorable decision and invariably would result in further judicial proceedings." (Citations omitted; internal quotation marks omitted.) Johnson v. Department of Public Health, supra,48 Conn. App. 113-14.
The Johnson decision also refers to other claims brought by the plaintiff that are described as an "independent civil action." The Appellate Court said that this was improper as the plaintiff was "attempting, under circumstances that are impermissible, to prevent the making of a proper record of agency action, including a decision of the issues, for proper judicial review." Johnson v. Department of Public Health, supra,48 Conn. App. 120-21.
General Statutes § 22a-403 (a) provides that the Commissioner of the DEP may hold a public hearing "if the public interest will be best served thereby" and must hold a hearing if he receives a petition signed by twenty-five persons requesting a hearing, hardly an onerous requirement. Thus, the plaintiffs in this case can have a hearing before the DEP either because the Commission decides to have one or if they precipitate a hearing. A record before the administrative agency charged with regulating dams in this state will thus be developed. If unsatisfied with the Commissioner's decision, the plaintiffs have the right under General Statutes § 22a-408 to appeal to the Superior Court in accordance with General Statutes § 4-183, the Uniform Administrative Procedures Act. See Johnson v. Department ofCT Page 4789Public Health, supra, 48 Conn. App. 110.[2] In the meantime, however, this suit is premature. One does not know at this point either the contents of the defendants' proposals regarding the dam, or the DEP's reaction thereto. Ultimately, either the plaintiffs will be afforded a public hearing or they can obtain one without too much effort.
Moreover, neither exception to the doctrine of exhaustion of administrative remedies referred to in Johnson v. Department ofPublic Health, supra, 48 Conn. App. 113-14, is applicable in the present action because there has been no showing that recourse to the DEP will be futile, inadequate or definitely unsuccessful.
Hence, the defendants' motions to dismiss for lack of subject matter jurisdiction based on the failure to exhaust their administrative remedies before the DEP are granted.
So Ordered.
Dated at Stamford, Connecticut, this 1st day of April, 1998.
William B. Lewis, Judge